# UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Eric Wellman,
      Petitioner,

       vs.                     Case No. 1:08cv102
                                   (Beckwith, S.J.; Black, M.J.)

Hamilton County Municipal Court,
      Respondent.

---

## REPORT AND RECOMMENDATION

---

Petitioner has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the assistance of counsel. He challenges his June 2006 conviction in the Municipal Court of Hamilton County, Ohio, for obstructing official business.[1] This case is before the Court on the petition and petitioner's memorandum in support of the petition (Docs. 1, 8); respondent's return of writ (Doc. 7); and respondent's supplemental return of writ with exhibits, which was filed on June 16, 2009 pursuant to an Order issued by this Court (Doc. 13).

### Background

Petitioner was convicted after a jury trial on a charge of obstructing official business in violation of Ohio Rev. Code § 2921.31. He was sentenced to a 90-day jail term with 85 days of that term "suspended;" a 30-day term of "home incarceration;" and one year of probation. (*See* Doc. 7, p. 2; Doc. 13, Tr. 370). On June 19, 2006, the court stayed the execution of the sentence during the pendency of petitioner's appeal in the state courts. (*See* Doc. 7, p. 2).

---

[1] To date, petitioner's sentence, which has been stayed both by the state courts and by this Court, has not been executed. (*See* Docs. 1, 11).

With the assistance of his trial counsel, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District, raising the following assignments of error: (1) the evidence was insufficient to support petitioner's conviction; (2) petitioner was denied his constitutional right to cross-examine the witnesses against him; (3) the trial court erred in its instructions to the jury "by permitting the jury to consider events after [petitioner's] arrest on the issue of 'substantial stoppage;'" (4) the trial court erred in failing to give petitioner's proposed instructions, which "allowed the jury to find him guilty for a failure to act;" and (5) petitioner's conviction was obtained in violation of his First Amendment right to freedom of speech. (*See* Doc. 13, Ex. C).

On June 15, 2007, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the trial court's judgment. (*Id.*). In its decision, the state appellate court made the following factual findings, which are presumed correct under 28 U.S.C. § 2254(e)(1),[2] based on evidence presented at trial regarding the incident that resulted in petitioner's arrest and conviction:

> The state's evidence showed that agent Robert Boldin of the Ohio Department of Public Safety and Sergeant Brent McCurley of the Cincinnati Police Department went to The Exchange nightclub to investigate liquor-permit violations. They waited outside until an undercover police officer notified them that he had observed violations inside the club.
>
> When Boldin entered the club around 3:00 a.m., he saw 30 to 40 patrons in the "VIP" area. Many of these patrons were still drinking alcohol even though the club's liquor permit only allowed alcohol to be consumed until 2:30 a.m. Boldin stopped the first employee he could find and asked to speak to the person in charge. He planned to issue a citation to the highest-ranked person present who was associated with the club.

---

[2] Specifically, 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has neither cited nor presented any evidence to rebut the Ohio Court of Appeals' factual findings quoted herein. Therefore, he has not shown that such findings are erroneous.

The employee told Boldin to speak to Sung Oh, the manager of the club for the evening. As Boldin and McCurley attempted to speak to Mr. Oh, Wellman approached them and demanded to know why the officers were there. Believing him to be a club patron, they told Wellman to step away while they conducted their investigation. Other officers were clearing patrons from the club. Because it was a late night and the patrons had been drinking, Boldin and McCurley believed that gaining control of the situation was important for their own and the patrons' safety.

Wellman became upset and started cursing at the officers. He eventually stepped away, and the officers again attempted to speak to Mr. Oh. Wellman soon returned and was even more belligerent. He placed himself between the officers and Mr. Oh, yelling and cursing. Still believing that Wellman was a patron, the officers again ordered him to step away so that they could complete their investigation.

As the officers made a third attempt to speak with Mr. Oh, Wellman again interrupted, still yelling and cursing. This time he identified himself as "the owner" of the club. Wellman was a minority shareholder of the club, although he was not involved in its daily operation.

The officers then turned their attention to Wellman and asked to see his identification and the club's liquor permit. He refused to produce either document. Boldin explained that if he was the owner of the liquor permit, Ohio law required him to provide identification and the liquor permit. Wellman again refused and started walking away.

The officers ordered Wellman to stay, believing, based upon his claim of ownership, that he was the person to whom they should issue the citation. He again refused to comply, stating that he was leaving and that he was not going to give them anything. The officers ordered him to stop. He attempted to leave through a back door, but the officers stopped him and placed him under arrest. They eventually spoke to Paul Yankie, the owner and operator of the premises, and finished their investigation.

(*Id.,* pp. 2-3).

Petitioner next sought leave to appeal to the Supreme Court of Ohio. On November 21, 2007, the state supreme court declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. D).

Assisted by the same attorney who represented him in the state proceedings, petitioner filed the instant federal habeas corpus petition in February 2008. (*See* Doc. 1). Petitioner also filed a motion for stay of execution of his sentence pending the resolution of the federal habeas petition. (Doc. 10). In the absence of opposition by respondent, the motion was granted on April 24, 2009. (Doc. 11).

Petitioner alleges as grounds for relief the same claims of error that he raised to the Ohio courts on direct appeal.[3] In the return of writ, respondent concedes that the instant petition does not trigger statute of limitations concerns, that petitioner has exhausted his state court remedies, and that petitioner's claims are "not barred by any state law procedural default." (Doc. 7, pp. 2-3). Therefore, petitioner's claims for relief are subject to review on the merits.


## OPINION

### A.  Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground One Of The Petition Challenging The Sufficiency Of Evidence

In Ground One of the petition, petitioner alleges that the evidence was insufficient to support his conviction for obstructing official business under Ohio Rev. Code § 2921.31(A). (Doc. 1, p. 5).

In this case, the Ohio Court of Appeals was the only state court to address the merits of the due process claim. Citing only state case-law, the court overruled the claim of error, reasoning in relevant part as follows:

R.C. 2921.31(A) provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a

---

[3]  Although petitioner does not allege the claim of a First Amendment violation as a ground for relief in the petition itself, he has argued he is entitled to habeas relief based on the merits of such claim in his "Memorandum In Support of Writ." (*See* Doc. 1; Doc. 8, pp. 14-15). Respondent also has addressed the claim in the return of writ. (*See* Doc. 7, p. 12).

public official of any authorized act within the public official's capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." A violation of this statute requires an affirmative act. A person cannot be guilty of obstructing official business by doing nothing or failing to act.

Wellman argues that his conduct did not constitute obstructing official business because he simply made reasonable requests for an explanation from the officers. He also argues that refusal to provide a driver's license and other documentation is not an act that can be the basis for a conviction under R.C. 2921.31.

The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties. In this case, Wellman's conduct went beyond asking the officers questions and refusing to give his identification. In fact, numerous patrons asked questions, and they were not arrested.

Wellman's entire course of conduct prevented the officers from gaining control of the situation, identifying the highest-ranking person present, inspecting the liquor permit, and issuing the citation. He actively prevented them from talking to the individual they believed was the manager of the club, not just by asking questions, but by being belligerent and argumentative. When he finally announced that he was the owner, even though he did not actively participate in the club's operation, he refused to provide his identification and the club's liquor license as state law required. Instead, he tried to leave, despite being ordered to stay. Under the circumstances, the evidence was sufficient to show that he committed acts that constituted the offense of obstructing official business.

Wellman next argues that his conduct was limited to truthful speech and that the state failed to prove that he intended his speech to obstruct official business. This court has held that truthful speech can satisfy the act element of the statute if it was done for the purpose of impeding an officer in the performance of his or her duty.

"The purpose with which a person does an act is determined from the

manner in which it is done, the means used, and all the other facts and circumstances in evidence." The trier of fact must be able to infer from the defendant's conduct that the defendant intended to obstruct official business. "Where a defendant's conduct is limited to truthful speech, one cannot reasonably infer intent to obstruct official business unless the circumstantial evidence clearly demonstrates such intent."

In this case, Wellman's conduct involved more than truthful speech. It also went beyond arguing with a police officer. Considering his conduct as a whole, the jury had an adequate basis for concluding that he had intended to obstruct Boldin and [Mc]Curley in the performance of their duties.

Finally, Wellman argues that the state failed to prove that a "substantial stoppage" of the officers' progress had occurred. This court has held that the state must prove that the defendant's conduct in fact hampered or impeded the public official in the performance of the official's duties. We have stated that "there must be some substantial stoppage of the officer's progress before one can say he was hampered or impeded."

Wellman contends that the officers estimated that his conduct had delayed them approximately two to five minutes, which was not a "substantial stoppage." But this court has also stated that "[w]e do not hold that any finite period of time constitutes a 'substantial stoppage,' be the delay occasioned by the interference thirty seconds or two minutes." If the record demonstrates that the defendant's act hampered or impeded the officer in the performance of his duties, the evidence supports the conviction.

The evidence showed that Wellman's conduct was not merely "petty," as he claims. It prevented the officers from talking to the appropriate person for the issuance of the citation, from gathering physical evidence, and from gaining control of the situation for several minutes. The officers testified that gaining control of the situation was important for the safety of all involved. Danger to the people at the scene was relevant. Consequently the evidence did show that Wellman's conduct hampered or impeded the officers in the

performance of their duties. The state did not have to show that Wellman had prevented the officers from performing their duties, only that he had obstructed them from doing so.

In sum, our review of the record shows that a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that the state had proved beyond a reasonable doubt all the elements of obstructing official business under R.C. 2921.31(A). Therefore, the evidence was sufficient to support the conviction....

(Doc. 13, Ex. C, pp. 4-7) (footnotes to state case citations omitted).

In the usual case, a federal habeas petitioner is not entitled to relief unless the state court's adjudication of his constitutional claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942. An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

In this case, although the Ohio Court of Appeals did not cite Supreme Court precedent in addressing petitioner's sufficiency of evidence claim, the court utilized the proper standard of review established by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307 (1979). The Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship,* 397 U.S. 358, 363-64 (1970). Therefore, as the Ohio Court of Appeals apparently understood (*see* Doc. 13, Ex. C, p. 7), when a prisoner raises a sufficiency of evidence claim in a petition for writ of habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

This standard does not require the State to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, under this standard, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert. denied,* 464 U.S. 951, 962 (1983).

It is the jury's responsibility as the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not

permitted to make its own subjective determination of guilt or innocence or otherwise substitute its opinion for that of the trier of fact which convicted the petitioner. *Id.* at 318-19 & n.13; *see also York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam), *cert. denied,* 490 U.S. 1049 (1989).

Moreover, the *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense *as defined by state law.*" *Jackson,* 443 U.S. at 324 n.16 (emphasis added); *see also Sanford v. Yukins,* 288 F.3d 855, 860 (6th Cir.), *cert. denied,* 537 U.S. 980 (2002).

It is well-settled that federal habeas courts generally are bound by the state court's interpretation of state law that was "announced on direct appeal of the challenged conviction." *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) (citing *Estelle,* 502 U.S. at 67-68, and *Mullaney v. Wilbur,* 421 U.S. 684, 691(1975)). "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 237 (1940) (and cases cited therein); *see also Hampton v. United States,* 191 F.3d 695, 701 (6th Cir. 1999) (citing *Hicks v. Feiock,* 485 U.S. 624, 630 n.3 (1988)); *cf. Lawler v. Fireman's Fund Ins. Co.,* 322 F.3d 900, 903 (6th Cir. 2003).

In this case, to establish petitioner's guilt for obstructing official business under Ohio Rev. Code § 2921.31, the State was required to prove that petitioner (1) performed an act; (2) without privilege; (3) with purpose to prevent, obstruct, or delay the performance of officers Boldin and McCurley acting in their official capacities in investigating and issuing a citation for liquor-permit violations; and (4) hampered or impeded the performance of the officers' duties. *See In re Payne,* No. C-040705, 2005 WL 2248870, at *2 (Ohio Ct. App. 1 Dist. Sept. 16, 2005). (unpublished).

As the Ohio Court of Appeals pointed out in its decision on direct appeal, Ohio Rev. Code § 2921.31 criminalizes only "affirmative acts" undertaken to hamper or impede a public official in the performance of his official duties, not the failure to act. *State v. Certain,* 905 N.E.2d 1259, 1264 (Ohio Ct. App. 4 Dist. 2009). In addition, as the Ohio Court of Appeals also recognized, to establish that the officers were hampered or impeded in the performance of their official duties,

the defendant's conduct must be found to have created a "substantial stoppage" of the officers' progress. *State v. Grice,* 906 N.E.2d 1203, 1205-06 (Ohio Ct. App. 1 Dist. 2009).

As a matter of Ohio law, "substantial stoppage" is not defined by "any finite period of time ..., be the delay occasioned by the interference thirty seconds or two minutes." *State v. Dunn,* No. C-790319, 1980 WL 352885, at *2 (Ohio Ct. App. 1 Dist. Mar. 26, 1980) (unpublished); *see also Grice,* 906 N.E.2d at 1205-06. It is the "person's actions [that] determine if he committed the offense, not the length of those actions." *State v. Martauz,* No. 08-MA-177, 2009 WL 1914395, at *4 (Ohio Ct. App. 7 Dist. June 22, 2009) (unpublished); *cf. Grice,* 906 N.E.2d at 1205-06 (although the "stoppage" necessary to establish guilt "is not defined by a particular time, ... it must occur because of the defendant's act"); *Dunn, supra,* 1980 WL 352885, at *2 (finding sufficient evidence of "substantial stoppage" where the record "clearly demonstrate[d]" that the defendant's "action did obstruct or delay the officer in the performance of [an official] duty").

Petitioner presents three arguments in support of his claim that the evidence was insufficient to support his conviction for obstructing official business. First, he contends that because he was an "owner" as opposed to "a mere patron" of The Exchange nightclub, he had the right to ask the officers what was going on and to "attempt to correct their mistake" in focusing the investigation on Sung Oh, who had "no ownership or managerial position in the business." (Doc. 8, pp. 4-5). He also claims that "substantial stoppage" was not shown given officer McCurley's admission on cross-examination that the "entire incident took about 2 minutes." (*Id.*, p. 6). Finally, petitioner argues that in the absence of any showing that he committed "some act ... where he stepped over the line," the State's reliance on petitioner's "entire course of conduct" was insufficient to establish a criminal offense. (*Id.,* pp. 8-10). Petitioner's arguments are unavailing.

Contrary to petitioner's first argument, it appears upon review of the trial transcript, that petitioner never sought to correct any mistaken belief of the officers about Sung Oh's involvement in the nightclub. Moreover, the undersigned finds that it was reasonable for the Ohio Court of Appeals to conclude that petitioner's "conduct went beyond asking the officers questions."

Officer Boldin testified that when petitioner approached him to ask what was going on while he was talking with Mr. Oh, petitioner did not identify himself "as

anyone particularly involved with the operation." (Doc. 13, Tr. 18). Petitioner was told the "investigation did not have anything to do with him" and was asked to leave. (*Id.,* Tr. 19). Instead of letting the officers know then who he was, or that they were focusing their attention on the wrong person, petitioner stated: "This is fucking bullshit. I can't believe this." (*Id.,* Tr. 20).

Both Boldin and McCurley testified that although petitioner was asked to leave so that they could continue their conversation with Oh about "what the violations were" and what the enforcement process would entail, petitioner walked away for only a "minute or so" and "became very interruptive and belligerent towards us" during the course of their conversation with Oh. (*Id.,* Tr. 20-21, 92). Both officers testified that petitioner interrupted their talk with Oh by physically inserting himself between the officers and Oh two or three times. (*Id.,* Tr. 20-21, 92, 94). Boldin testified that when that happened:

> I had to direct my conversation and attention to Mr. Wellman. Again, I told him that this had nothing to do with [him]. He needed to go. And immediately in front of us, he is again cussing me, he says, Fuck you. I can't believe you are here. This is a private party. You guys need to leave. You have no right to be here. Get out.

(*Id.,* Tr. 21).

McCurley testified that he specifically asked petitioner if he was "affiliated with the bar," and received no verbal response. (*Id.,* Tr. 93). According to McCurley, petitioner eventually identified himself as "the owner" of the nightclub "the third time that he had stepped in between us [and] we told him to step back, just to leave if not an employee." (*Id.*, Tr. 94).

At that point, the officers turned their attention to petitioner as the person they "needed to speak with regarding the administrative violations." (*Id.,* Tr. 25, 94). But, instead of complying with the officers' repeated requests to see not only his identification but also the liquor permit for the purpose of issuing a citation, he "continued to be belligerent" and said: "I don't have to stay here and listen to this. Fuck, you pal. I'm leaving." (*Id.,* Tr. 25, 27-30, 94-95).

Petitioner started to walk away. (*Id.,* Tr. 28, 95). He was ordered to stop and remain on the premises, and again ordered to produce identification and a copy of

the liquor permit. (*Id.*, Tr. 28, 94-95). McCurley testified that he prevented petitioner from leaving the premises by "grabb[ing] hold of his arm," and telling "him to step back inside, that he was not permitted to leave." (*Id.,* Tr. 99). Petitioner never produced the liquor license, but provided his identification after he was arrested. (*Id.,* Tr. 99-100). Only when Paul Yankie came forward were the officers able to ascertain who the actual owner of the bar was and to complete their investigation and issue a violation notice. (*See id.,* Tr. 31-32).

Contrary to petitioner's contention, a rational trier of fact could have inferred from this evidence that petitioner engaged in affirmative acts with the intent to obstruct the officers in the performance of their official duties.

In addition, sufficient evidence was presented to support the finding that the defendants' conduct hampered or impeded the officers in the performance of their official duties by creating a "substantial stoppage" of their progress. Whether or not the conduct lasted two minutes as petitioner contends from McCurley's testimony on cross-examination, or ten minutes as Boldin maintained at trial (*see id.,* Tr. 32, 139),[4] both Boldin and McClury testified that petitioner's conduct hindered them in the performance of their duties by causing a "tremendous amount of confusion as to who was the actual owner, who was in charge of the permit premises that evening." (*Id.,* Tr. 33, 97-99). Both officers also testified that their investigation was delayed by petitioner's interference with their attempted conversation with Sung Oh, whom Boldin said was "someone we would have just easily had this conversation with and issued violation notices to," as well as by his disruptive behavior as they attempted to ascertain "who were employees and who were patrons" so that they could "separate those individuals." (*Id.,* Tr. 33, 96).

As the Ohio Court of Appeals reasonably found, petitioner's conduct impeded the officers in their efforts to gather physical evidence and from gaining control of the situation which was "important for the safety of all involved." (*See id.,* Doc. 13, Ex. C, p. 6). Boldin explained:

---

[4] *Cf. Martauz, supra,* 2009 WL 1914395, at *4 (upholding denial of motion for acquittal based on two-to-six minute incident); *City of Findlay v. Reinhart,* No. 5-04-45, 2005 WL 940859, at *2 (Ohio Ct. App. 3 Dist. Apr. 25, 2005) (unpublished) (upholding denial of motion for acquittal based on ten-minue delay of traffic stop caused by the defendant passenger's belligerent behavior).

Unfortunately, with that many people inside the permit premises and the ... multiple violations that occurred, multiple liquor violations there. With the number of people inside the permit premises, this was somewhat disorganized, confusing because all of the people milling around.... In a situation like that, our duty is to contain the situation, make sure that we have the manager, the employees, the people that were associated with the violations, make sure we contain that, make sure we secured the evidence that we need for the violation and to secure the premises itself. The last thing we can afford to do is have 30 or so intoxicated patrons building up steam as far as their anger towards us being there, especially when sort of the instigator egging on certain people and leave them there to put ourselves in some sort of danger or jeopardize our investigation....

(*Id.,* Tr. 22; *see also id.,* Tr. 98, 284-85).

Accordingly, in sum, the undersigned concludes that after viewing the evidence in the light most favorable to the prosecution, a rational juror could have found beyond a reasonable doubt that petitioner was guilty of obstructing official business in violation of Ohio Rev. Code § 2921.31. The state appellate court's adjudication of petitioner's claim neither is contrary to nor involves an unreasonable application of the *Jackson* standard, and is based on a reasonable determination of the facts in light of the evidence presented at trial. Petitioner, therefore, is not entitled to habeas corpus relief based on his sufficiency of evidence claim alleged in Ground One of the petition.

## B. Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground Two That He Was Denied The Right To Confront A Witness

In Ground Two of the petition, petitioner alleges that he was denied his rights under the Confrontation Clause of the Constitution when the trial court would not allow defense counsel to pursue a line of questioning on cross-examination of State witness Robert Boldin when Boldin was recalled to testify at the close of the State's case that petitioner's challenged conduct occurred over a ten-minute span of time. (Doc. 1, p. 4).

Specifically, it appears that petitioner challenges the trial court's ruling refusing to allow a question directing Boldin "to just explain in real time, [by

going] through everything that was said and show me how it takes ten minutes."
(Doc. 13, Tr. 139-40).  In refusing to allow the question, the court stated: "He
already testified.  You can make whatever argument you want to make, but his
recount of something is not the same as having spaces in the act.  Simply not
relevant to decide this case."  (*Id.,* Tr. 140).

On direct appeal, the Ohio Court of Appeals relied solely on state case-law
and addressed the claim of constitutional error stemming from the trial court's
ruling as follows:

> In his second assignment of error, Wellman contends that the trial
> court erred in denying cross-examination on an essential element of
> the offense.  He argues that the court should have allowed him to have
> Boldin reenact the events in "real time" to demonstrate that his
> conduct could not have created a "substantial stoppage."  This
> assignment of error is not well taken.
>
> Defendants have a constitutional right to cross-examine witnesses.
> But the trial court has wide discretion to impose reasonable limits on
> cross-examination to prevent, among other things, confusion of the
> issues.  In this case, reenactment could have been misleading to the
> jury.  Under the circumstances, we cannot hold that the trial court's
> decision to limit cross-examination was so unreasonable, arbitrary or
> unconscionable as to connote an abuse of discretion....

(Doc. 13, Ex. C, pp. 7-8) (footnotes to state case citations omitted).

The Sixth Amendment's Confrontation Clause, made applicable to the states
through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions,
the accused shall enjoy the right . . . to be confronted with the witnesses against
him."  U.S. Constit. VI; *see also Ohio v. Roberts,* 448 U.S. 56, 62-63 (1980).
Because cross-examination is "the most effective method by which a defendant can
test the truth of testimony given against him," *Stevens v. Bordenkircher,* 746 F.2d
342, 346 (6th Cir. 1984), the right of confrontation and cross-examination is
considered "an essential and fundamental requirement" for a fair trial.  *Barber v.
Page,* 390 U.S. 719, 721 (1968) (quoting *Pointer v. Texas,* 380 U.S. 400, 405
(1965)).

The Supreme Court has stated that "[i]t does not follow, of course, that the Confrontation Clause ... prevents a trial judge from imposing any limits on defense counsel's inquiry" during cross-examination of a State witness. *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986). "On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, ... prejudice, confusion of the issues, ... or interrogation that is repetitive or only marginally relevant." *Id.*

In this case, as the Ohio Court of Appeals reasonably determined, the trial court acted well within its discretion without triggering any Confrontation Clause concerns in prohibiting the reenactment testimony that defense counsel sought to elicit from Boldin. As the trial court apparently understood, the time involved in providing an oral account of the events that occurred at the nightclub on the night in question does not accurately reflect the actual time-frame in which the acts themselves occurred. Therefore, the Ohio courts were rightfully concerned about relevancy and the very real possibility of confusion of the issues that would be misleading to the jury, if defense counsel were allowed to pursue the reenactment line of questioning on Boldin's cross-examination.

Accordingly, petitioner is not entitled to relief based on the Confrontation Clause claim alleged in Ground Two of the petition.

## C. Petitioner Is Not Entitled To Relief Based On His Claims Alleged In Grounds Three And Four Challenging The Jury Instructions

In Ground Three of the petition, petitioner claims that the trial court improperly instructed the jury to the extent the jury was permitted to consider the time it took to process him after his arrest in determining the issue of "substantial stoppage." (Doc. 1, p. 6). In Ground Four, petitioner alleges that the trial court erred in failing to give his proposed jury instructions on the affirmative act element of the obstructing official business offense. (*Id.*).

The Ohio Court of Appeals, which was the only state court to issue a reasoned decision addressing the claims on the merits, ruled in relevant part as follows based on state-law standards:

In his third assignment of error, Wellman contends that the trial court

erred by permitting the jury to consider events after his arrest on the issue of "substantial stoppage." He argues that the jury should not have considered the time taken to handcuff him, to walk him to a police car, and to process him after the arrest. This assignment of error is not well-taken.

We hold that any error in allowing the testimony about events after Wellman's arrest was harmless beyond a reasonable doubt because it did not contribute to the conviction. The evidence about events after his arrest was brief. Further, the officers' testimony about how his behavior had hindered or impeded them was clear, and the jury was not misled in any way....

In his fourth assignment of error, Wellman contends that the trial court erred in failing to give his proposed instructions. He argues that the failure to give those instructions allowed the jury to find him guilty for a failure to act. This assignment of error is not well taken.

Generally, the trial court must give requested special instructions when they are correct, pertinent, and timely presented. The court need not give a requested instruction when it is included, in substance, in the general charge.

Wellman's first proposed instruction stated that "Ohio Rev. Code § 2921.31 [requires] an affirmative act in order to trigger culpability." The second instruction stated, "One cannot be guilty of obstructing official business by doing nothing. *** The mere failure of a person to respond to an officer's request is not in violation of the ordinance. *** Additionally, 'the mere refusal to produce identification upon request of a police officer will not support a finding of obstructing official business.'"... These were correct statements of law.

Nevertheless, after reviewing the jury instructions as a whole, we hold that they adequately informed the jurors that they had to find that Wellman had committed an affirmative act that hampered or impeded the officers in the performance of their duties. The jury could not have reasonably concluded, after hearing the instructions, that they could find Wellman guilty for a failure to act. Under these

circumstances, we cannot hold that the trial court abused its discretion in failing to give the requested instructions....

(Doc. 13, Ex. C, pp. 8-9) (footnotes to state case citations omitted).

As an initial matter, to the extent petitioner claims he is entitled to relief because the trial court committed error or otherwise abused its discretion under state law with respect to the jury instructions that were given in this case, he raises issues of state law only that are not cognizable in this federal habeas corpus proceeding. A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").

It is well-settled under Supreme Court precedents that errors in jury instructions in a state criminal trial generally are not reviewable in a federal habeas corpus proceeding unless they deprived the petitioner of a fundamentally fair trial and due process of law. *See Henderson v. Kibbe,* 431 U.S. 145, 154 (1977); *see also Estelle,* 502 U.S. at 72. Before a federal court may overturn a state conviction based on an error in the jury instructions, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten,* 414 U.S. 141, 146 (1973).

Therefore, the question on federal habeas review of a state conviction is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle,* 502 U.S. at 72 (quoting *Cupp,* 414 U.S. at 147); *see also Henderson,* 431 U.S. at 154. The Supreme Court has clearly established that in answering this question, the instruction must "not be judged in artificial isolation," but rather must be considered in the context of the instructions as a whole and the trial record. *Cupp,* 414 U.S. at 146-47; *see also Estelle,* 502 U.S. at 72. In addition, if the challenged instruction is ambiguous, the inquiry turns on whether a reasonable likelihood exists that the jury applied the instruction in a way that violates the Constitution. *Estelle,* 502 U.S. at 72 (quoting *Boyde v. California,* 494 U.S. 370, 380 (1990)).

In this case, petitioner first challenges the jury instructions to the extent they permitted the jury to consider events after his arrest in determining whether his conduct caused a "substantial stoppage" in the performance of the officers' lawful duties. Upon review of the jury instructions, it appears from the record that no instruction was given specifically permitting the jurors to consider petitioner's post-arrest conduct in making this determination. (*See* Doc. 13, Tr. 354-60). Rather, the court instructed the jury only generally as follows about the findings that were required to be made before petitioner could be found guilty of obstructing official business:

> The defendant is charged with obstructing official business. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 4th day of December, 2005, in Hamilton County, Ohio, the defendant, without privilege to do so and with purpose to obstruct the performance by a public official of any authorized act within his official capacity did an act that hampered Sergeant B. McCurley in the performance of his lawful duties.
>
> There must be some substantial stoppage of the officer's progress before one can say he was hampered or impeded.

(*Id.*, 354-55).

As the Ohio Court of Appeals reasonably determined, to the extent the trial court committed any error in allowing testimony about petitioner's post-arrest conduct, such error was harmless. It is clear from the record that petitioner's pre-arrest conduct was emphasized by the State at trial (*see id.,* Tr. 18-35, 92-99, 133-34), whereas the evidence about events after his arrest was minimal (*see id.,* Tr. 131-33). Most importantly, the officers' testimony specifying how they were hindered in the performance of their duties pertained only to petitioner's pre-arrest conduct. (*See id.,* Tr. 33-35, 96-98, 133-34, 284-88).

In this federal habeas corpus proceeding challenging a state conviction, the Court may not grant relief based on a finding of constitutional trial error unless such error "had a substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). No such showing has been made here.

With respect to petitioner's second claim challenging the trial court's refusal to give petitioner's proposed instructions on the "affirmative act" element of the offense, which were objected to by the prosecutor (*see* Doc. 13, Tr. 302), the undersigned agrees with the Ohio appellate court's assessment that the jury was adequately informed about that element of the obstructing official business offense to satisfy due process. The court specifically instructed the jury that petitioner could not be found guilty of the charged offense unless it found beyond a reasonable doubt that petitioner "did an act that hampered Sergeant McCurley in the performance of his lawful duties." (*Id.*, Tr. 354-55). Moreover, when addressing the "purpose" element of the offense, the court referred numerous times to the commission of intentional "acts." (*Id.,* Tr. 355-56). Therefore, upon review of the jury instructions as a whole, the undersigned concludes that it is not reasonably likely that the jury would have been confused by or otherwise applied the instructions that were given to convict petitioner for a failure to act.

Accordingly, in sum, this Court concludes that: (1) to the extent petitioner alleges in Grounds Three and Four of the petition that the trial court erred under state law in deciding on the jury instructions that were given in this case, his claims are not cognizable in this federal habeas corpus proceeding; and (2) in any event, petitioner has not shown he is entitled to habeas corpus relief based on the merits of any claim alleged in Grounds Three and Four challenging the jury instructions on constitutional due process grounds.

**D. Petitioner Is Not Entitled To Relief Based On His Additional Claim That He Was Arrested And Convicted For Exercising His First Amendment Rights**

Petitioner additionally claims in his "Memorandum In Support Of Writ" that he was wrongfully arrested and convicted for exercising his First Amendment right to freedom of speech. (Doc. 8, pp. 14-15).

The Ohio Court of Appeals, which was the only state court to address this claim on the merits, ruled in relevant part as follows:

In his fifth assignment of error, Wellman contends that his conviction violated his right to freedom of speech under the First Amendment to

the United States Constitution. He argues that he committed no affirmative act, other than speech, and that mere argument with the officers could not support the conviction. This assignment is not well taken.

....[T]he conduct for which Wellman was convicted went beyond just speech. Other patrons asked questions of the officers that evening, and they were not arrested. Wellman's entire course of conduct was the basis of his conviction.

Further, this court has stated that the First Amendment "has never conferred an absolute right to engage in express conduct whenever, wherever or in whatever manner a speaker may choose. R.C. 2921.31 is content-neutral on its face. A person has a right to verbally protest a police officer's actions or even to argue with or curse at an officer. But that person does not have the right to hamper or impede the officer in the performance of the officer's duties. In this case, Wellman was not convicted based on the content of his speech, but on his volume and demeanor and his other actions that hindered the officers in conducting their investigation. His behavior "crossed the line between fair protest and actual obstruction." Consequently, his conviction did not violate his First Amendment rights....

(Doc. 13, Ex. C, pp. 9-10) (footnotes to state case citations omitted).

The Supreme Court has long recognized that the protection of the First Amendment "does not end at the spoken or written word" and that "conduct may be 'sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.'" *Texas v. Johnson,* 491 U.S. 397, 404 (1989) (quoting *Spence v. Washington,* 418 U.S. 405, 409 (1974)). By the same token, the Supreme Court has refused to adopt the position "that an apparently limitless variety of conduct can be labeled 'speech' [within the First Amendment's protection] whenever the person engaging in the conduct intends thereby to express an idea." *See United States v. O'Brien,* 391 U.S. 367, 376 (1968).

In *O'Brien,* the Supreme Court stated that even where "the alleged communicative element in [a person's] conduct is sufficient to bring into play the First Amendment, it does not necessarily follow that [such conduct] is

constitutionally protected activity." *Id.* It is well-settled under Supreme Court precedents that where "'speech' and 'nonspeech' elements are combined in a course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *Johnson,* 491 U.S. at 407 (quoting *O'Brien,* 391 U.S. at 376).

In *Johnson,* 491 U.S. at 406, the Supreme Court explained: "The government generally has a freer hand in restricting expressive conduct than it has in restricting the written or spoken word." Therefore, only those laws that are "directed at the communicative nature of conduct must, like a law directed at speech itself, be justified by the substantial showing of need that the First Amendment requires." *Id.* (quoting *Community for Creative Non-Violence v. Watt,* 703 F.2d 586, 622-23 (D.C. Cir. 1983) (Scalia, J., dissenting), *rev'd sub nom. Clark v. Community for Creative Non-Violence,* 468 U.S. 288 (1984)).

In cases where there is an important or substantial governmental interest in regulating the non-speech element of the conduct, which is unrelated to the suppression of free expression, a more lenient standard of review, which was enunciated in *O'Brien,* is to apply. *See id.* at 407. Under this standard, the government regulation is "sufficiently justified" if (1) "it is within the constitutional power of Government;" (2) "it furthers an important or substantial governmental interest;" (3) "the governmental interest is unrelated to the freedom of expression;" and (4) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *O'Brien,* 391 U.S. at 377. The Supreme Court has suggested that this more lenient test "in the last analysis is little, if any, different from the standard applied to time, place, or manner restrictions" on speech in a public forum. *Johnson,* 491 U.S. at 407 (quoting *Clark,* 468 U.S. at 298).[5]

In this case, as the Ohio Court of Appeals pointed out, Ohio Rev. Code § 2921.31 is content-neutral, or in other words, is not aimed at the suppression of expression or the communicative nature of conduct. Therefore, at best, petitioner

_____

[5] Under the line of cases addressing "time, place and manner restrictions" on public expression, the Supreme Court has held that such restrictions "are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels of communication of the information." *Clark,* 468 U.S. at 293 (and cases cited therein).

can only argue that the course of conduct for which he was indicted and convicted involved a speech as well as a non-speech element, which is subject to review under the more lenient standard enunciated by the Supreme Court in *O'Brien* for evaluating First Amendment claims. *Cf. O'Brien,* 391 U.S. at 377-82 (involving conviction of person who burned his Selective Service registration certificate as part of a war protest, under federal statute which was enacted "to insure the continuing availability of issued certificates" as a means to "classify and conscript manpower for military service").

Under the first prong of *O'Brien*'s four-part test, there is no question that it was within the constitutional power of the Ohio legislature to enact and enforce its obstructing official business statute. *Cf. Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 569 (1991) (in a case involving a First Amendment challenge to a public indecency statute, the Supreme Court acknowledged that the states have the authority under their "traditional police power" to enact and enforce statutes which "provide for the public health, safety and morals"). Moreover, under the second and third prongs of the *O'Brien* test, it is clear that the statute furthers an important or substantial government purpose, which is based on a State interest unrelated to the suppression of expression–to ensure that public officials are not hindered or obstructed in the performance of their official duties.

Finally, under the fourth *O'Brien* factor, it appears that the restrictions which are contained in Ohio's obstructing official business statute are no greater than necessary to fulfill the State's interest. Specifically, under the statute, a person cannot be found guilty of the offense unless the State establishes beyond a reasonable doubt that the person (1) engaged in affirmative acts, (2) without privilege to do so, (3) with the purpose of preventing, obstructing, or delaying the performance by a public official of his lawful duties, and (4) actually hampered or impeded the public official in the performance of his lawful duties. *See* Ohio Rev. Code § 2921.31(A).

As the Ohio Court of Appeals reasoned in this case, petitioner was arrested and convicted under this statute not on the basis of the content of his speech, but because his "entire course of conduct," including the volume of his speech, demeanor and "other actions," hindered the officers in conducting their investigation of liquor-permit violations at The Exchange nightclub. Based on the evidence presented by the State at trial, the court could reasonably conclude that petitioner's behavior "crossed the line between fair protest [protected by the First

Amendment] and actual obstruction." *See State v. Stayton,* 709 N.E.2d 1224, 1227-28 (Ohio Ct. App. 1 Dist.), *appeal dismissed,* 694 N.E.2d 75 (Ohio 1998); *cf. Condon v. Wolfe,* 310 Fed.Appx. 807, 818-20 (6th Cir. Feb. 12, 2009) (not published in Federal Reporter) (rejecting habeas petitioner's claim that his conduct in photographing bodies at the county morgue constituted a "form of expression" protected by the First Amendment, which prohibited his conviction under Ohio's abuse-of-corpse statute)

Therefore, petitioner's arrest and conviction do not trigger First Amendment concerns, and petitioner is not entitled to habeas relief based on such a ground.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to any of petitioner's grounds for habeas relief, because petitioner has not made a substantial showing that he has stated a "viable claim of the denial of a constitutional right" or that the issues presented herein are "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: __8/24/09__          __s/Timothy S. Black_____
    cbc                Timothy S. Black
                       United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Eric Wellman,
     Petitioner

    vs                          Case No. 1:08cv102
                                 (Beckwith, S.J.; Black, M.J.)

Hamilton County Municipal Court,
     Respondent

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action. Any party may object to the Magistrate Judge's Report and Recommendation **within 15 days** after the date the Report and Recommendation is stamped as "filed" by the Clerk of Court. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed **within 10 days** after the opposing party has been served with the objections. A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).